IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA COSTANZO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No: 21 cv 1626 |
| v. | ) | |
| | ) | Judge: Andrea R. Wood |
| COSTCO WHOLESALE | ) | |
| CORPORATION., | ) | Magistrate Judge: Jeffrey T. Gilbert |
| | ) | |
| | ) | |
| Defendant. | ) | |

**Nonmovant Plaintiff's Local Rule 56.1(b)(2) Response to Defendant's
Statement of Material Facts**

Now Comes the Nonmovant Plaintiff, CYNTHIA COSTANZO, by and through their attorneys, Nemeroff Law Offices, Ltd., and on her Response states:

**STATEMENT OF FACTS**

1. The plaintiff, Cynthia Costanzo, alleges she rolled her ankle and fell on February 28, 2019, at the St. Charles, Illinois Costco warehouse as she was exiting her vehicle in the parking lot due to uneven concrete with a deviation in height. (Complaint, Par. 6, Ex. "A").

**Response:** Admit.

2. This matter was originally filed by the plaintiff in the Circuit Court of the Sixteenth Judicial Circuit in Kane County, Illinois. Costco removed the case to this Court on March 25, 2021 based on diversity jurisdiction because the plaintiff resides in Illinois, Costco is headquartered in Washington and the alleged amount in controversy exceeds $75,000. (Notice of Removal, Ex. "B").

**Response:** Admit.

3. The plaintiff is a Costco Member and she had been shopping at the St. Charles Costco since it first opened, approximately 3-4 times a month. (Pl. Dep., pg. 18, line 12 – pg. 19, line 11, Ex. "C").

**Response:** Admit.

*Plaintiff's Alleged Incident*

4. On the day of her incident, the plaintiff went to Costco alone and her incident occurred in the parking lot, before she went into the warehouse. She was driving a white 2018 Cadillac XT5, which is an SUV. (Pl. Dep., pg. 20, line 17 – pg. 21, line 24; pg. 25 line 7-16).

**Response:** Admit in part and Deny in part. Deny that Plaintiff went into the warehouse. (Pl. Dep., pg. 21, line 8).

5. In the photographs below, the parking spot with the blue circle is where the plaintiff parked her SUV just before her incident took place and she pulled straight into the spot. (Pl. Dep., pg. 29, line 24 – pg. 32, line 3).

**Response:** Admit.



2



6. The aerial photograph below shows the St. Charles Costco warehouse parking lot and the layout of the parking lot at the time of the alleged incident. (Pl. Dep., pg. 25, line 17 – pg. 26, line 14; Pl. Dep., Ex. #1).

**Response:** Admit.



7. The parking spot where the plaintiff parked was not a handicapped parking spot. (Pl. Dep., pg. 65, line 17 – pg. 66, line 3).

**Response:** Admit.

3

8. The parking spot where the plaintiff parked was directly next to a landscaped area. The landscaped area had a cement curb around it. (Pl. Dep., pg. 34, line 24 – pg. 35, line 10).

**Response:** Admit.

9. On the opposite side of the landscaped area from where the plaintiff parked, farther from the Costco warehouse, there was a shopping cart corral. (Pl. Dep., pg. 48, lines 4-10).

**Response:** Admit.

10. Where the plaintiff parked her vehicle, there was two feet of pavement between her vehicle and the cement apron for the curb. (Pl. Dep., pg. 41, line 15 – pg. 42, line 3).

**Response:** Admit.

11. After parking, the plaintiff grabbed her purse and opened the driver-side door to exit. There was nothing blocking her view of the ground as she exited her vehicle. She could not recall if she looked at the ground as she exited her vehicle, but it was not her habit to do so. (Pl. Dep., pg. 32, lines 4 – 12; pg. 33, line 23 – pg. 34, line 6).

**Response:** Admit.

12. The parking lot was blacktop pavement and the plaintiff parked next to a landscaped area that had a cement curb around it. The plaintiff could not recall if she stepped onto the blacktop pavement or the cement when she stepped out of her vehicle, but she believed at some point she stepped onto both at once because that is what triggered her fall. (Pl. Dep., pg. 35, lines 3-20).

**Response:** Admit in part and deny in part. Deny that plaintiff could not recall if she stepped onto the blacktop pavement or the cement when she stepped out of her vehicle. When Plaintiff exited her vehicle, both feet were initially on the asphalt before she stepped onto the height differential between the asphalt and cement curb. (Pl. Dep., pg. 42, lines 15-21; pg. 44, lines 2-12; pg. 46, lines 1-18).

13. The plaintiff took no more than one or two steps out of her vehicle in order to close her door before her incident took place, but she did not close the vehicle door before falling. She was

4

standing within the driver's doorway when she fell, and the door was all the way open. As she was stepping toward the back of her vehicle and grabbing the door with her right hand to close it, she fell. (Pl. Dep., pg. 37, line 16 – pg. 45, line 23).

**Response:** Admit in part and deny in part. Admit that after Plaintiff stepped out of the vehicle with both feet, that thereafter she took no more than one or two steps out of her vehicle in order to close her door. (Pl. Dep., pg. 42, lines 15-21; pg. 44, lines 2-12). Admit that she was in the process of going to close the door. (Pl. Dep., pg. 43, lines 19-22; pg. 44, line 1 – pg. 45, line 8). Deny that Plaintiff was actually grabbing/touching the door. (Pl. Dep., pg. 45, line 9-12; pg. 138, line 1).

14. The plaintiff believed she fell because of the difference in height between the pavement and the concrete channel. She lost her balance. She could not recall which foot she was stepping with when she fell or which part of her foot was touching the height difference. (Pl. Dep., pg. 45, line 24 – pg. 46, line 18).

**Response:** Admit.

15. At the time of her fall, the plaintiff was wearing boots with a 1 ½ inch heel. She does not know if there was any damage to her boots from the fall. (Pl. Dep., pg. 46, line 19 – pg. 47, line 4).

**Response:** Admit.

16. When the plaintiff fell, she was facing the cart corral, which was on the other side of the landscaped area. She fell toward the back of her vehicle, which was to her left side. She landed on the ground, laying on her left side and on her back. (Pl. Dep., pg. 48, lines 4 – 10; pg. 50, line 20 – pg. 51, line 24).

**Response:** Admit.

17.  When the plaintiff fell, a cart employee was approximately 60 feet away at the back of the parking lot. After her fall, he approached the plaintiff and told her he would get a manager. (Pl. Dep., pg. 55, line 19 – pg. 57, line 24).

**Response:** Admit.

18.  As the plaintiff laid on the ground after her fall, she noticed a difference in height from the concrete channel to the asphalt. (Pl. Dep., pg. 58, lines 5-11).

**Response:** Admit.

19.  The only Costco employee the plaintiff recalled speaking with after her fall was a manager, Joe. She could not recall if she was on the ground or on the stretcher when she spoke with the manager and she only recalled giving him her name and number. (Pl. Dep., pg. 59, line 14 – pg. 60, line 21).

**Response:** Admit in part and deny in part. Another Costco employee spoke to plaintiff at the scene. (Pl. Dep., pg. 55, lines 19-24).

*Measurement of Height Deviation*

20.  The plaintiff did not measure the height deviation between the pavement and cement at any time on the day of her fall and she did not see anyone else measure the area that day. She also did not take any photographs of the fall area on the day of the incident. (Pl. Dep., pg. 61, line 21 – pg. 62, line 19).

**Response:** Admit.

21.  The plaintiff returned to the St. Charles Costco warehouse parking lot with her husband approximately a month later, on either March 17 or 19, 2019, and photographs were taken showing the parking spot where the plaintiff had her incident. (Pl. Dep., pg. 68, line 5 – pg. 70, line 19).

**Response:** Admit.

6

22. According to the plaintiff, the sole purpose of her and her husband returning to the Costco warehouse parking lot on March 17 or 19, 2019 was to take photographs and determine the height difference. (Pl. Dep., pg. 140, line 21 – pg. 141, line 8; pg. 151, lines 7-19).

**Response:** Admit.

23. The plaintiff did not have a tape measurer or ruler with her when she and her husband went to the Costco parking lot, so they used the heel of her husband's boot to measure the height difference between the blacktop pavement and cement in the general area of her fall. Once they returned home, they measured the size of the boot heel. (Pl. Dep., pg. 71, line 16 – pg. 73, line 23; Plaintiff's Photos, Ex. "D").

**Response:** Admit.

24. When the plaintiff measured her husband's boot heel, the full heel measured 1 7/8 inches. She never took a photograph of her measurement of the boot heel. (Pl. Dep., pg. 75, lines 1-24).

**Response:** Admit.

25. The plaintiff believed the size of the deviation between the blacktop pavement and the cement at the area of her fall as seen in the photographs she took in March 2019 was the same as on the day of her fall. (Pl. Dep., pg. 74, lines 15 – 20).

**Response:** Admit.

26. Joseph Reed was a night floor manager at the St. Charles Costco warehouse in February 2019 and after the plaintiff's incident he went out to the parking lot. (Reed Dep., pg. 5, lines 4-13; pg. 9, line 19 – pg. 10, line 25, Ex. "E").

**Response:** Admit.

27. On May 20, 2021, Mr. Reed took measurements of the asphalt parking lot where it meets the concrete channel in the area of the plaintiff's fall. He believed there was a height difference

7

between the two due to the freeze and thaw from snow. (Reed Dep., pg. 16, line 21 – pg. 17, line 9; pg. 31, lines 7 – pg. 32, line 2; pg. 47, lines 15–25; pg. 52, line 15 – pg. 54, line 10; Reed Depth Measurements, Ex. "F").

**Response:** Admit that Mr. Reed took measurements. Object to foundation and admissibility of Mr. Reed's belief because he lacks expertise, education, training or experience in the causation of these types of height defects. Object to foundation and relevance of measurements taken on May 20, 2021, two years later, without testimony that it was the same as on the date of the incident, which Mr. Reed does not know. (Reed Dep., pg. 33, lines 11-18; pg. 52, lines 19-23; pg. 78, lines 11-19; pg. 81, lines 8-18).

28. The height difference between the pavement and cement in the area measured by Mr. Reed in May 2021 ranged from 0 to 1 ½ inches. (Reed Depth Measurements).

**Response:** Deny. The height difference between the pavement and cement is at least 1 and 15/16 inches which is the full height of Plaintiff's husband's boot. (Pl. Dep., pg. 142, lines 10-23; Def. Rule 26(a)(2) Disclosure). Object to foundation and relevance of measurements taken on May 20, 2021, two years later, without testimony that it was the same as on the date of the incident, which Mr. Reed does not know. (Reed Dep., pg. 33, lines 11-18; pg. 52, lines 19-23; pg. 78, lines 11-19; pg. 81, lines 8-18).

*Costco Information*

29. Robyn Lightle was the warehouse manager of the St. Charles Costco warehouse at the time of the plaintiff's incident. She worked at the St. Charles Costco from September 2017 until August 2021, and she was the highest ranking manager in the warehouse. (Lightle Dep., pg. 5, line 12 – pg. 6, line 12, Ex. "G").

**Response:** Admit.

30. After Ms. Lightle learned of the plaintiff's incident, she inspected the area where the plaintiff fell. She did not believe the height difference was significant or unacceptable. She never requested a repair of the area at issue. (Lightle Dep., pg. 42, lines 3-8; pg. 42, line 25 – pg. 43, line 15; pg. 48, lines 21-24; pg. 95, line 4 – pg. 98, line 12).

**Response:** Admit in part. Object to foundation and admissibility of Ms. Lightle's belief because she lacks expertise, education, training or experience in maintenance, repair or safety of this type of defect and cannot render expert testimony. (Lightle Dep., pg. 43, lines 8-12; pg. 44, line 1 – pg. 48, line 16).

31. During the time Ms. Lightle was the warehouse manager in St. Charles, from 2017 to 2021, no one other than the plaintiff complained about the area of pavement at issue in the parking lot. (Lightle Dep., pg. 91, line 25 – pg. 92, line 8).

**Response:** Admit to the extent that nobody complained specifically to Ms. Lightle. (Lightle Dep., pg. 91, line 25 – pg. 92, line 8).

*Expert Opinions*

32. The defendant's liability expert, Koji Hirota, calculated the height difference of the asphalt pavement compared to the cement as of the date of the plaintiff's photographs and it was 1.0268 inches at the location where the plaintiff's husband stood and measured with his boot heel in the photograph taken in March 2019 and produced by the plaintiff – shown below. (Def. Rule 26(a)(2) Disclosure, Ex. "H").

**Response:** Admit that Defendant's expert performed calculations. Deny that the height difference is less than 1 and 15/16 inches. The height difference between the pavement and cement is at least 1 and 15/16 inches which is the full height of Plaintiff's husband's boot. (Pl. Dep., pg. 142, lines 10-23; Def. Rule 26(a)(2) Disclosure).

9



33. Mr. Hirota calculated the height difference between the two surfaces as of the day of the photograph by measuring Mr. Costanzo's boot heel (which measured 1.9375 inches) and analyzing that measurement and the photograph produced by the plaintiff of the boot next to the height difference. (Def. Rule 26(a)(2) Disclosure).

**Response:** Admit that Mr. Hirota performed calculations and that Mr. Costanzo's boot heal measured 1 and 15/16 inches. Deny that Mr. Hirota calculated an accurate height difference between the two surfaces where Plaintiff fell. The height difference between the pavement and cement is at least 1 and 15/16 inches which is the full height of Plaintiff's husband's boot. (Pl. Dep., pg. 142, lines 10-23; Def. Rule 26(a)(2) Disclosure).

34. Plaintiff's liability expert, David Mr. Schroeder, never reviewed the sworn deposition testimony of the plaintiff or any other witness in this matter. This is the first case in which Mr. Schroeder did not receive any witness deposition testimony to review prior to offering opinions. Mr. Schroeder believed deposition testimony regarding the fall, how it occurred, where it occurred and what the area looked like would be relevant to offering opinions. (Schroeder Dep., pg. 17, lines 8-10; pg. 48, lines 8-13; pg. 49, line 21 – pg. 51, line 9, Ex. "I").

10

**Response:** Admit in part and deny in part. Objection, relevance. Deny that this is the first case in which Mr. Schroeder did not receive any witness deposition testimony to review prior to offering opinions because he answered that he was not sure. (Schroeder Dep., pg. 50, lines 13-14).

35. Mr. Schroeder was advised by Plaintiff's Counsel that the cause of the fall was a 1¾ inches height differentiation between asphalt and concrete. He was told by Counsel the height measurement was taken a month after the incident with the plaintiff's husband's boot. (Schroeder Dep., pg. 11, line 24 - pg. 14, line 3).

**Response:** Admit.

36. For purposes of his analysis and opinions, Mr. Schroeder assumed the measurement of the height difference at the area of the fall was 1¾ inches. (Schroeder Dep., pg. 67, lines 4-8).

**Response:** Deny that this is an "assumption." Mr. Schroeder has a basis for the height difference being 1¾ inches which includes a written statement by Plaintiff Cynthia Costanzo stating that she measured the height difference of the area where she fell to be 1¾ inches. (Schroeder Dep., pg. 137, line 1 – pg. 138, line 20; Ex. #3).

37. In Mr. Schroeder's opinion, the only amount of change in level between surfaces that is not a potential tripping hazard is ¼ inch for an abrupt change or ½ inch for a beveled edge. The number is the same for indoor and outdoor surfaces. (Schroeder Dep., pg. 67, line 9 – pg. 68, line 10; pg. 80, lines 1-18).

**Response:** Admit in part and deny in part. Deny "only amount of change" as it omits lesser deviations. Admit that Mr. Schroeder's opinion is that potential tripping hazards exist when there is a change in level greater than the applicable industry standards and codes, which is ¼ inch for an abrupt change or ½ inch for a beveled edge for both indoor and outdoor surfaces. (Schroeder Dep., pg. 67, line 9 – pg. 68, line 10; pg. 80, lines 1-18).

38. It is Mr. Schroeder's opinion that once there is a raising, depression or unevenness of pavement over a quarter inch (unbeveled), the industry standard required the area to be repaired, and this applies to all businesses, retailers and to any location where a person walks. (Schroeder Dep., pg. 111, lines 7-23).

**Response:** Admit.

39. According to Mr. Schroeder, his opinion is based on The Code requirement and the industry standard being a quarter inch. (Schroeder Dep., pg. 84, lines 1-12; pg. 95, line 18 – pg. 96, line 14).

**Response:** Admit.

40. According to Mr. Schroeder, any level changes less than 18 inches are difficult to notice and create a tripping hazard when it comes to stairs and he opinioned that is relevant to the area at issue. (Schroeder Dep., pg. 84, line 24 – pg. 89, line 9).

**Response:** Admit.

41. Mr. Schroeder believed the height difference between the asphalt and cement could have changed and fluctuated with the weather over the years. He never inspected the area of parking lot at issue either before or after the alleged incident. (Schroeder Dep., pg. 123, lines 13-23).

**Response:** Admit.

Respectfully submitted,
NEMEROFF LAW OFFICES, LTD.

_____
David Nemeroff, One of Plaintiff's Attorneys

NEMEROFF LAW OFFICES, LTD.
Attorneys for Plaintiff
105 W. Madison St., Ste. 1900
Chicago, IL 60602
(312) 629-8800
ARDC: 6229947
Service@nem-law.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA COSTANZO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No: 21 cv 1626 |
| v. | ) | |
| | ) | Judge: Andrea R. Wood |
| COSTCO WHOLESALE | ) | |
| CORPORATION., | ) | Magistrate Judge: Jeffrey T. Gilbert |
| | ) | |
| | ) | |
| Defendant. | ) | |

**Nonmovant Plaintiff's Local Rule 56.1(b)(3)**
**Statement of Material Facts**

42) <u>Pl. Costanzo Dep. Ex. #2</u> shows the path Plaintiff drove to the parking spot in the Defendant's lot. The shopping cart corral is marked with an A. Plaintiff parked in the spot marked with a B. Handicap parking spots are marked C and D. (<u>Pl. Dep.</u>, pg. 26, line 15 – pg.28, line 24, attached to Defendant's Motion as Exhibit "C").

43) When Plaintiff exited her vehicle, both feet were initially on the asphalt before she stepped onto the height differential between the asphalt and cement curb. She thereafter took one or two steps before falling. (<u>Pl. Dep.</u>, pg. 42, lines 15-21; pg. 44, lines 2-12; pg. 46, lines 1-18; pg. 135, line 2 – pg. 136, lines 2).

44) Plaintiff was in the process of going to close her driver's door when she stepped on the height differential between the asphalt and cement curb. (<u>Pl. Dep.</u>, pg. 43, lines 19-22; pg. 44, line 1 – pg. 45, line 8; pg. 135, lines 8-21; pg. 142, lines 1-4).

45) Plaintiff stepped on the height differential with part of her foot on the higher asphalt and part of her foot on the lower cement curb apron, which caused her to lose her balance and fall. (<u>Pl. Dep.</u>, pg. 35, lines 14-20; pg. 46, lines 8-18; pg. 137, line 1; pg. 142, lines 1-4).

46) <u>Pl. Costanzo Dep. Ex. #3</u> are photographs showing a similar height difference between the asphalt and cement at the parking space area where Plaintiff fell as it was on the day of the incident. These photos show the defect running the length of the parking spot. (<u>Pl. Dep.</u>, pg. 155, lines 1-12).

47) <u>Pl. Costanzo Dep. Ex. #4</u> are photographs taken at the scene of the incident showing where Plaintiff parked at the time of the incident and showing the paramedic assisting Plaintiff. (<u>Pl. Dep.</u>, pg. 36, lines 1-21).

48) <u>Pl. Costanzo Dep. Ex. #6</u> are photographs taken about a month after the incident showing the asphalt parking lot in the parking space that Plaintiff parked in at the time of the incident, in the same condition as on the day of the incident. <u>Pl. Costanzo Dep. Ex. #6 C</u> shows about where Plaintiff fell, where Plaintiff's husband's boot is in the photograph. It shows the same deviation between the asphalt and cement as it was on the day Plaintiff fell. These photos show the defect running the length of the parking spot. (<u>Pl. Dep.</u>, pg. 73, lines 3-17; pg. 74, lines 15-20; pg. 140, lines 8-20; pg. 143, line 16 – pg. 144, line 6).

49) When Plaintiff's husband put his heel down on the concrete channel up against the asphalt to measure the height difference, the height difference was up to the top of his heel. The heel got covered completely. Ms. Costanzo was able to observe this. (<u>Pl. Dep.</u>, pg. 142, lines 10-23).

50) Defendant Costco has employees all day long corralling carts in the general vicinity where Plaintiff fell by the cart corral. (<u>Reed Dep.</u>, pg. 18, lines 2-7; pg. 24, lines 9-14; pg. 55, lines 6-10, attached to Defendant's Motion as Exhibit "E").

2

51) Defendant's employee Joseph Reed does not know if the height differential two years after the incident is the same as on the date of the incident. (Reed Dep., pg. 33, lines 11-18; pg. 52, lines 19-23; pg. 78, lines 11-19; pg. 81, lines 8-18).

52) At the scene of the incident, it was clear to Mr. Reed that there was a height differential between the asphalt and concrete channel. (Reed Dep., pg. 40, lines 10-24).

53) During the week, the Costco store is open for ten and a half hours. (Reed Dep., pg. 55, lines 1-5).

54) Plaintiff's architectural expert David Schroeder opines that parking lots need to be able to accommodate safe transition into and out of vehicles and to safely accommodate the movement of pedestrians. Mr. Schroeder opines that the abrupt level change where Plaintiff fell between the concrete gutter and the asphalt parking space surface is unreasonably hazardous. The level change is not flat enough to form a suitable walking surface. Due to its unusual location, the level change is unexpected. (Schroeder Dep. Ex. #5; Schroeder Dep., pg. 140, lines 14- pg. 141, line 16; pg. 143, lines 1-8, attached to Defendant's Motion as Exhibit "I").

55) Plaintiff's architectural expert David Schroeder's basis for the height differential being 1 and ¾ inches includes a written statement by Plaintiff Cynthia Costanzo stating that she measured the height difference of the area where she fell to be 1¾ inches. (Schroeder Dep., pg. 137, line 1 – pg. 138, line 20; Schroeder Dep. Ex. #3).

56) Plaintiff's architectural expert David Schroeder opines that the abrupt level change does not meet industry standards and is in violation of state and local codes. This includes the 2020 Illinois Department of Transportation Highway standards for traffic control and ASTM Standard Practice for Safe Walking Surfaces. This includes the 2015 International Property Maintenance Code which was in effect in St. Charles at the time of the accident, and the

3

2000 NFPA Lifesafety Code which applied to this parking lot. (Schroeder Dep. Ex. #5; Schroeder Dep., pg. 143, lines 9-20).

57) Plaintiff's architectural expert David Schroeder opines that the industry ASTM standard applies to walkways, including the parking lot where Plaintiff fell. (Schroeder Dep., pg. 105, line 21 – pg. 108, line 7).

58) Plaintiff's architectural expert David Schroeder opines that it is likely the level change was present for at last a year and possibly significantly longer than that prior to the accident. (Schroeder Dep. Ex. #5). In the alternative, if this section was paved five months prior to the accident by Rose Paving, then Defendant Costco would have known about the defect at that time. (Schroeder Dep., pg. 144, lines 4-24).

59) Plaintiff's architectural expert David Schroeder opines that the owner/operator of the property knew or should have known of the hazardous condition and corrected it. (Schroeder Dep. Ex. #5).

60) Plaintiff's architectural expert David Schroeder opines that Defendant Costco should have permanently fixed the height differential the summer prior to Plaintiff's fall. Defendant Costco could also have performed a temporary fix in the winter prior to Plaintiff's fall by putting down a patch in the gutter to get rid of the level change. The temporary repair is not expensive. They could also put an orange cone down and close the parking spot so customers avoid the area. (Schroeder Dep., pg. 130, lines 19-20; pg. 131, line 13 – pg. 132, line 15).

61) The entire parking lot at Costco is a means of egress according to the NFPA code. (Schroeder Dep., pg. 121, lines 1-24).

62) The parking spaces closer to the Costco store are used more regularly than parking spots further away from the store. The parking spot where Plaintiff fell is under 100 feet

4

from the door. (<u>Lightle Dep.</u>, pg. 58, lines 10-74; pg. 62, line 1 – pg. 63, line 5, attached to Defendant's Motion as Exhibit "G").

Respectfully submitted,<br>
NEMEROFF LAW OFFICES, LTD.<br>
<br>
_____<br>
David Nemeroff, One of Plaintiff's Attorneys

NEMEROFF LAW OFFICES, LTD.
Attorneys for Plaintiff
105 W. Madison St., Ste. 1900
Chicago, IL 60602
(312) 629-8800
ARDC: 6229947
Service@nem-law.com

5