IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CYNTHIA COSTANZO, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 21-cv-01626 ) ) Judge Andrea R. Wood |
| COSTCO WHOLESALE CORPORATION, | ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

In February 2019, Cynthia Costanzo drove to a warehouse store location of Costco Wholesale Corporation ("Costco"), a retailer that sells goods in bulk. When Costanzo arrived at the Costco store, she parked her car in a space located next to a curbed, landscaped area. Costanzo exited her car, took several steps, and then fell onto the ground, injuring her lumbar vertebrae. She lost her footing due a height difference between the asphalt covering the parking lot and the concrete channel beneath the curb. As a result of this incident, Costanzo filed a lawsuit in the Circuit Court of Kane County, asserting a state-law claim for negligence against Costco, which subsequently removed the case here. Now before the Court is Costco's motion for summary judgment. (Dkt. No. 42.) For the reasons stated below, the motion is granted.

**BACKGROUND**

The following facts are drawn from the parties' submissions pursuant to Local Rule 56.1. They are undisputed unless otherwise noted.

Costco is a membership-only wholesale retailer. Costanzo, a Costco member, shopped at the Costco location in St. Charles, Illinois, roughly three to four times per month. (Pl.'s Resp. to Def.'s Statement of Material Facts ("PRDMF") ¶ 3, Dkt. No. 47.) On February 28, 2019,

Costanzo drove to Costco's St. Charles warehouse. (*Id.*) Once there, she parked her car in an open spot paved with asphalt, which was located on the premises but not directly next to the warehouse entrance.[1] (*Id.* ¶¶ 5–6.) Photographs show that the parking spot abutted one other parking space. (*Id.*) A curbed, landscaped area bordered a different side of the parking spot, and a concrete channel lay beneath that curb. (*Id.* ¶¶ 8, 14.) The asphalt and the concrete channel were not level with each other. (*Id.* ¶ 14.) On the opposite side of the landscaped area—nonadjacent to the parking spot—there was a shopping cart corral. (*Id.* ¶ 9.)

Costanzo parked her vehicle with the driver-side door parallel to the landscaped area, leaving two feet of asphalt between the vehicle and the curb. (*Id.* ¶ 10.) After opening her driver-side door and exiting the vehicle, Costanzo took several steps forward before placing her foot onto the asphalt and the concrete channel at the same time. (*Id.* ¶ 13.) Due to the height difference, Costanzo lost her balance, rolled her ankle, and fell to the ground. (*Id.* ¶ 14)

The parties agree that the parking lot asphalt and the concrete channel were not flush with each other; however, the parties dispute the height difference between the two surfaces. Neither Costanzo nor Costco measured it on the day of the incident. (*Id.* ¶ 20.) They did not take photographs either. (*Id.*) But, several weeks later, Costanzo returned to the Costco parking lot with the aim of determining the height difference in the relevant area.[2] (*Id.* ¶¶ 21, 22.) Costanzo did not come equipped with a tape measure or a ruler but she was joined by her husband, who

---

[1] The parties dispute the exact distance between the parking spot and the entrance. Citing the deposition testimony of Costco manager Robyn Lightle, Costanzo claims the distance is less than 100 feet. Without providing an alternative measurement, Costco objects, stating that Lightle lacks relevant expertise and thus cannot properly provide expert testimony. (Def.'s Resp. to Pl.'s Statement of Additional Material Facts, ¶ 62, Dkt. No. 49.) The Court notes that Lightle did not testify that she personally measured a distance of less than 100 feet; instead, Lightle estimated the distance during her deposition using an ariel image of the parking lot provided by Costanzo's attorney. (Lightle Tr. at 62:1–10)

[2] Although the parties dispute the height difference, they agree that it did not change between the day of the incident and when Costanzo took photographs several weeks later. (PRDMF ¶ 22.)

sported a pair of boots. (*Id.* ¶ 23.) Costanzo's husband placed his boot heel between the asphalt and the concrete to measure the height difference, while Costanzo took photographs of both the heel and the entire curb. (*Id.* ¶¶ 23, 25.) Based on the photograph of the heel, Costanzo and her husband concluded that the difference between the two surfaces was precisely the same size as the heel, which Costanzo later determined to be 1 7/8 inches (*Id.* ¶¶ 24, 25.) Costco, for its part, also measured the same area of the parking lot. (*Id.* ¶ 27.) On May 20, 2021, more than two years after the incident, a Costco manager recorded a height difference ranging from 0 to 1 1/2 inches. (*Id.* ¶ 28.) Unlike Costanzo, the Costco manager measured the differential along the length of the entire curb. (*Id.*)

After this litigation commenced, Costco's liability expert, Koji Hirota, a licensed architect, concluded that the difference was 1 67/2500 inches.[3] (*Id.* ¶ 32.) To reach this figure, Hirota first measured the heel of the boot Costanzo's husband was wearing, which, by Hirota's calculation, was 1 15/16 inches—not 1 7/8 inches, as Costanzo concluded. (*Id.*) Then, using the photograph Costanzo took several weeks after the incident, Hirota compared the heel to the deviation at issue. (*Id.*) Unlike Costanzo, Hirota did not conclude that they were the same height. (*Id.*) Instead, he observed a difference of 1 67/2500 inches between the asphalt and the concrete channel. (*Id.*)

Costanzo's liability expert, David Schroeder, who is also a licensed architect, assumed for the purposes of his hazard analysis that the height difference was 1 3/4 inches. (*Id.* ¶ 36.) For purposes of his expert work, Schroeder relied exclusively on the measurement given to him from Costanzo's attorney, who told Schroeder that a 1 3/4 inch deviation caused the incident. (*Id.*

---

[3] Hirota provided his conclusion in decimal form. Elsewhere, however, the parties use fractions to denote measurements. For ease of comparison, the Court converts Hirota's measurement of 1.0268 inches to a fraction.

3

¶¶ 35, 36.) Notably, in her brief in opposition to summary judgment, Costanzo appears to abandon this measurement, instead contending that the difference was 1 15/16 inches. In so arguing, Costanzo adopts Hirota's measurement of the boot heel while also maintaining that the heel was exactly the same size as the deviation. (*See* Pl.'s Opp'n Br. at 4)

## DISCUSSION

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment when "admissible evidence, considered as a whole, shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, even after all reasonable inferences are drawn in the non-movant's favor." *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted). "A dispute is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In determining whether summary judgment is appropriate, courts may consider the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" in deciding a motion for summary judgment. *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017) (quoting Fed. R. Civ. P. 56(c)).

### I. The *De Minimis* Rule

The parties agree that Illinois law governs this dispute. To prevail on her negligence claim under Illinois law, Costanzo must establish that (1) Costco owed her a duty, (2) Costco breached that duty, and (3) Costco's breach proximately caused her injury. *Bell v. Hutsell*, 955 N.E.2d 1099, 1104 (Ill. 2011).

Costco contends that Costanzo's claim fails at the first element, arguing that it did not owe Costanzo a duty to correct the height differential at issue. "In Illinois, businesses owe their invitees a duty to maintain the premises in a reasonably safe condition to avoid injuring them." *Reid v. Kohl's Dep't Stores, Inc.*, 545 F.3d 479, 481 (7th Cir. 2008) (citing *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1057–58 (Ill. 2006). However, under the *de minimis* rule, municipalities and private landowners owe no legal duty to repair sidewalks defects that are minor or slight. *Thompson v. Menard, Inc.*, No. 16 C 6560, 2017 WL 4164196, at *5 (N.D. Ill. Sept. 20, 2017) (citing *Hartung v. Maple Inv. & Dev. Corp.*, 612 N.E.2d 885, 888–89 (Ill. App. Ct. 1993)). The *de minimis* rule guards against the "unreasonable economic burden" that would accompany an obligation to "keep sidewalks in perfect condition all the time." *St. Martin v. First Hospitality Group, Inc.*, 9 N.E.3d 1221, 1225 (Ill. App. Ct. 2014). It reflects the "common knowledge that sidewalks are constructed in slabs for the very reason that they must be allowed to expand and contract with changes in temperature." *Id.* Accordingly, the *de minimis* rule recognizes that because of Illinois's "extreme and changeable weather conditions . . . slight variations in sidewalk elevations are to be expected." *Hartung*, 612 N.E.2d at 889. Pursuant to the *de minimis* rule, negligence becomes a question for the jury "'only when the defect in the sidewalk is such that a reasonably prudent man should anticipate some danger to persons walking upon it.'" *Butler v. Walmart, Inc.*, No. 19 C 6084, 2021 WL 2853367, at *4 (N.D. Ill. July 8, 2021) (quoting *Barrett v. FA Group, LLC*, 90 N.E.3d 537, 549 (Ill. App. Ct. 2017)). In general, "bright-line rule[s]" do not guide this inquiry. *Barrett*, 90 N.E.3d at 549 (citation omitted). When determining whether a height deviation is *de minimis* or actionable, courts consider "all of the pertinent facts." *St. Martin*, 9 N.E.3d at 1225. Even so, "it is well established

that, absent any aggravating factors, a vertical displacement of **less than two inches** is *de minimis*" as a matter of law. *Id.* (collecting cases) (emphasis added).

The Court concludes that the *de minimis* rule applies to this dispute, notwithstanding Costanzo's contention that it is inapposite because Costco "is not a municipality overseeing miles . . . of sidewalk slabs." (Pl.'s Opp'n Br. at 6.) *Hartung* makes clear that the "*de minimis* rule applies to private owners and possessors of land*,*" which includes Costco.[4] 612 N.E.3d at 889. Indeed, courts routinely apply the *de minimis* rule in cases involving curb defects in commercial parking lots. *See, e.g.*, *Thompson,* 2017 WL 4164196; *see also Komis v. Excel, Inc.*, No 2-16-0231, 2016 WL 6879303 (Ill. App. Ct. Nov. 18, 2016); *Valk v. Kroger Co.*, No. 2-15-1079, 2016 WL 3202386 (Ill. App. Ct. June 9, 2016).

The question, then, is whether the *de minimis* rule precludes a finding that Costco owed Costanzo a duty under the circumstances of this case. This inquiry turns on the height differential between the asphalt and the curb. On the one hand, Costco contends that the differential was 1 67/2500 inches; on the other, Costanzo claims that it was 1 15/16 inches. Crucial, for present purposes, is the "well established" rule that a difference of "less than two inches" is *de minimis* as a matter of law. *St. Martin*, 9 N.E.3d at 1225. Setting aside Costanzo's initial claim that the defect was 1 7/8 inches, the greatest differential supported by the record, 1 15/16 inches, is still less than two inches and therefore *de minimis* as a matter of law. *See Ward v. Menard, Inc.*, 18 C

---

[4] Costanzo suggests that the *de minimis* rule is inapplicable because Costco owed Costanzo a legal duty under what she terms a "traditional [negligence] analysis." (Pl.'s Opp'n Br. at 13.) However, "[t]he determination of whether a duty exists is a question of law," *Hartung*, 612 N.E.3d at 887, and under Illinois law, the *de minimis* rule informs the question of when a legal duty is owed. *See id.* at 888 ("The *de minimis* rule barring actions against municipalities for minor defects in sidewalks is rooted in the scope of municipalities' duty to maintain their property in a reasonably safe condition. This duty includes keeping sidewalks and streets safe for the purposes for which they are intended.").

05107, 2020 WL 7385454, at *4 (N.D. Ill. Dec. 16, 2020) (finding that a defect is *de minimis* as a matter of law when both parties agree that it is less than two inches).

Costanzo's arguments to the contrary are unpersuasive. In essence, she contends that despite admitting that the defect is less than two inches, this concession is not dipositive because "1 and 15/16 of an inch is not significantly different from two inches, which is not *de minimis*." (Pl.'s Opp'n Br. at 3.) She adds that because she could have made an error when she "eyeballed" her husband's boot, it is possible that she underestimated the size of the defect to the tune of 1/15 of an inch or more. (*Id.* at 4.) That possibility is mere speculation, however. The Court need only draw reasonable inferences in Costanzo's favor. *See, e.g., Perez v. Staples Cont. & Com. LLC*, 31 F.4th 560, 571 (7th Cir. 2022). And "[a]n inference is not reasonable if it is directly contradicted by direct evidence provided at the summary judgment stage, nor is a 'conceivable' inference necessarily reasonable at summary judgment." *Id.* In this case, all the evidence in the record points to the defect being less than two inches. That was the conclusion reached by Hirota, Costco's expert. That was also the conclusion reached by Costanzo—first, when she measured the boot heel at 1 7/8 inches; and later, when she adopted Hirota's 1 15/16 measurement in her brief. Given that Costanzo relies on speculation alone, an inference that the defect was actually two inches or greater is not reasonable. Thus, the Court finds that the height differential between the asphalt and the curb was under two inches and therefore *de minimis* as a matter of law.

## II. Aggravating Factors

The *de minimis* rule is not "applied blindly to cover every situation." *St. Martin*, 9 N.E.3d at 1225. (internal quotation marks omitted) Rather, a defect less than two inches may nonetheless be actionable if certain "aggravating factors" are present. *Id.* While the caselaw does not

7

enumerate a set checklist of factors, courts have found several circumstances to be aggravating, including poor lighting, *Cook v. Vill. of Oak Park*, 145 N.E.3d 600, 603 (Ill. App. Ct. 2019); heavy foot traffic, *Hartung*, 612 N.E.2d at 888; a likelihood of distraction in the area, *id.*; and proximity to the only means of ingress and egress, *Harris v. Old Kent Bank*, 735 N.E.2d 758, 764–65 (Ill. App. Ct. 2000).

Here, Costanzo cites four potentially aggravating factors: dimension, distraction, bottleneck, and pedestrian foot traffic in a commercial area. The Court considers each in turn.

### A. Dimension

According to Costanzo, the dimensions of the defect present an aggravating factor. Specifically, Costanzo posits that the height differential ran the entire length of the twelve-foot curb—not just where she fell. This, Costanzo claims, increases the likelihood that a pedestrian would be injured by the defect.

The Court is unpersuaded. First, Costanzo adduces no evidence that the height difference between the asphalt and the curb spanned the entire curb. Costanzo never measured the differential ***along*** the curb; instead, she took photographs of her husband's heel at one or two discrete spots and based her measurement on those images. Even viewed in the light most favorable to Costanzo, the evidence does not support a reasonable inference that the defect spanned twelve feet.[5] Costanzo claims that other photographs depicting the entire curb speak for themselves. But upon review, the Court disagrees; a curb-long defect is not visible in what Costanzo admits are "blurry" images. (Pl.'s Opp'n Br. at 6.) And, even assuming that the defect

---

[5] The Court notes that a Costco manager did measure the entire curb, albeit two years later. According to his calculation, the height difference ranged from 0 to 1 1/2 inches. Costanzo, however, disputes whether the deviation remained the same from the date of the incident until the date of the manager's measurements. (PRDMF ¶ 28.)

8

lined the entire curb, Costanzo concedes that the defect was consistently less than two inches. Thus, the *de minimis* rule would continue to militate against the existence of a duty. *See St. Martin*, 9 N.E.3d at 1225.[6]

### B. Distraction

Costanzo next claims that "she was in the process of going to close her driver's door when she stepped on the height differential." (Pl.'s Statement of Material Facts, ¶ 44, Dkt. No. 47.) According to Costanzo, this demonstrates that she was distracted, which qualifies as an aggravating factor.

Indeed, courts have found certain forms of distraction to be aggravating. In *Hartung,* for instance, the court singled out "heavy traffic," explaining that "because pedestrians may be distracted and must be constantly alert to avoid bumping into each other," this distracting scenario could render a *de minimis* defect actionable. 612 N.E.3d at 888. And, in *Harris*, the court reasoned that a patron exiting the only means of ingress and egress at a premises "might be reviewing the receipts of her transactions, looking for her car keys, or looking toward her car and, therefore, would not discover the sidewalk defect" due to such distractions. 735 N.E.2d at 764.

---

[6] The cases Costanzo cites do not counsel in favor of a different result. In *West v. City of Hoopeston*, for instance, the court considered two different dimensions within the context of a defective pothole. 497 N.E.2d 170 (Ill. App. Ct. 1986). There, the height differential at issue was between 1/4 and 9/16 of an inch. *Id.* at 172. But, in addition, a 2-inch horizontal gap separated the two concrete slabs. *Id.* Analyzing these measurements, the court found that the height difference of less than two inches was "slight." *Id.* at 173. However, the court nevertheless affirmed the denial of summary judgment, reasoning that the 2-inch "broken area between the slabs was sufficiently wide that a reasonable man could anticipate danger to persons walking upon it." *Id.* at 174. Here, unlike in *West*, Costanzo does not claim that the additional, larger dimension—the length of the curb—in any way contributed to her fall.

But a plaintiff must either provide evidence of an actual distraction or describe a distraction with specificity.[7] *See St. Martin*, N.E.3d 1221, 1227 ("plaintiff has not specifically alleged or provided any evidence that an aggravating circumstance such as heavy foot traffic, distraction, or congestion existed"). Here, Costanzo has not provided any evidence showing that she was actually distracted when the incident occurred. She was not looking for her keys or reviewing receipts. *Harris*, 735 N.E.2d at 764. Nor was she surrounded by heavy traffic—vehicular or pedestrian. *Hartung,* 612 N.E.3d at 888. And Costanzo does not claim that she was looking at her car—in other words, looking ***away*** from the defect—when she fell. *Harris*, 735 N.E.2d at 764. All Costanzo claims is that "she was in the process of going to close her driver's door." Without more, such a routine movement is not tantamount to an actual distraction that prevented Costanzo from noticing the defect. Accordingly, no reasonable juror could find that distraction is an aggravating factor in this case.

    **C.**    **Bottleneck**

Next, Costanzo claims that "bottleneck" is an aggravating factor, arguing that every driver who parks in the space will necessarily encounter the defect because it will be parallel to the driver-side door. She further speculates that the defective area will become "congested" if a passenger exits the passenger-side door at the same time that the driver exits the driver-side door.

---

[7] Similarly, courts require evidence of specificity when applying the "distraction exception" to the "open and obvious" rule, which also concerns premises liability and legal duty. "Generally, under [the open and obvious] rule, a party who owns or controls land is not required to foresee and protect against an injury if the potentially dangerous condition is open and obvious." *Bruns v. City of Centralia*, 21 N.E.3d 684, 690 (Ill. 2014) (internal quotation marks omitted). The distraction exception to this rule "will only apply. . . where evidence exists from which a court can infer that plaintiff was ***actually*** distracted.'" *Dunn v. Menard, Inc.*, 880 F.3d 899, 909 (7th Cir. 2018) (quoting *Bruns v. City of Centralia*, 21 N.E.3d 684, 691 (Ill. 2014) (emphasis added). In this context, "'the mere fact of looking elsewhere does not constitute a distraction.'" *Id.* (quoting *Bruns*, 21 N.E.3d at 692). "[N]or do 'self-created distractions' that are 'solely within the plaintiff's own creation.'" *Id.* (quoting *Whittleman v. Olin Corp.*, 832 N.E.2d 932, 936 (Ill. 2005).

Costanzo cites *Bartkowiak v. City of Aurora*, 102 N.E.3d 842 (Ill. App. Ct. 2018), in support of her argument. The *Bartkowiak* court acknowledged the existence of bottleneck conditions and congestion as aggravating factors, but the circumstances of that case are unlike those here. In *Bartkowiak*, which also concerned a parking lot, the defect was located near one of the only vehicle exits, "in an area where it was likely to be encountered by pedestrians" as they left the premises. *Id.* at 850. In addition to that parking lot's "bottleneck design," the *Bartkowiak* court relied on the "'madhouse' conditions of the congested parking lot when plaintiff was injured." *Id.* Here, however, an ariel photograph shows that the St. Charles Costco's parking lot is not designed in a bottleneck manner. And because the defect does not affect a means of ingress or egress, pedestrians do not encounter it as they enter and exit Costco. In fact, the curb only abuts one other parking space. Quite unlike the "madhouse conditions" in *Bartkowiak*, Costanzo has produced no evidence showing that the area was crowded at the time of her fall. Instead, she merely speculates that it could have been. But this, without more, is not enough. Taking everything together, Costanzo cannot show that a bottleneck is an aggravating factor in this case, even after all reasonable inferences are drawn in her favor.

### D. Pedestrian Foot Traffic in a Commercial Area

Lastly, and in a similar vein, Costanzo claims that many pedestrians will encounter the defect as they enter the store or use the nearby shopping corral. This is even more likely, Costanzo argues, because the parking spot is located around 100 feet from the warehouse entrance.

The Court is unpersuaded that Costanzo has identified an aggravating factor. First, although Costanzo claims that the parking spot is "popular" due to its proximity to the entrance, she provides no evidence at all in support of this bald assertion. *See Ward*, WL 7385454 at *6

11

(holding that a "commercial location alone, without a showing of high pedestrian count, is insufficient to finding an aggravating factor"). What is more, photographs of the premises depict a row of parking spots located much closer to the entrance, undercutting Costanzo's inferential leap. Second, even if it is reasonable to assume that a shopping corral attracts pedestrians, this circumstance is still ultimately immaterial because the defect does not abut the corral. Instead, it is located on the other side of the curb, parallel to the parking space. And, if a car were parked in that space, a pedestrian walking to or from the corral would not readily encounter the defect because only two feet of space separates the car from the curb. A pedestrian has no apparent reason to squeeze through that gap given that alternative walking routes abound. For these reasons, the evidence does not support an inference that pedestrian foot traffic amounted to an aggravating factor in this dispute.

## CONCLUSION

In sum, the Court concludes that the height difference between the asphalt and the concrete channel that allegedly caused Costanzo to fall was *de minimis*, and further that no reasonable juror could find the existence of any aggravating factor that would nonetheless impose on Costco a duty to correct the defect. Accordingly, Costanzo's negligence claim cannot be sustained. Costco's motion for summary judgment (Dkt. No. 42) is therefore granted.

ENTERED:

Dated: March 25, 2024

_____
Andrea R. Wood
United States District Judge